IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE BANKS, a minor, by and through her Guardian Ad Litem, ROBBIN BANKS,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MODESTO CITY SCHOOLS DISTRICT, CITY OF MODESTO, PAULA LETINE, JIM PFAFF, JAMES C. ENOCHS, JOHN BYRON, MARY JACKSON, DAWN MELEAD, RED BALFOUR, MIKE HENDERSON, JULIE MYERS, ROY W. WASDEN, ERIN URQUHART, & DOES 1 THROUGH 100,<br><br>                    Defendants. | No. CV-F-04-6284 REC SMS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT.<br><br>(Doc. 12) |

On July 11, 2005, the Court heard Defendants' motion to dismiss or, in the alternative, for a more definite statement of Plaintiff Rosie Banks' Complaint.  At that time, the Court requested further filing from the parties regarding a settlement agreement entered into by the parties.  That information was received on July 20, 2005.

Upon due consideration of the written and oral arguments of

1

1  the parties and the record herein, Defendants' motions are
2  GRANTED IN PART AND DENIED IN PART as set forth below.

3

4  **I.  Factual Background**

5       This case centers around the treatment of Plaintiff Rosie
6  Banks ("Plaintiff") by school and police officials.  At the time
7  of the alleged events, Plaintiff was thirteen years old and a
8  student in the Modesto City Schools District ("the District").
9  Plaintiff is mentally disabled; she has been diagnosed with
10 autism or an "autistic-like condition."  Plaintiff is also
11 African-American.  Although she is learning disabled, Plaintiff
12 has made progress toward normal functioning on an academic level
13 and improving her ability to handle new events.

14      Plaintiff was a student in the District for several years
15 before the events at issue occurred.  As a disabled student,
16 Plaintiff, through her parents, requested and received from the
17 District an Individualized Education Program ("IEP") as required
18 by the Individuals with Disabilities in Education Act ("IDEA").
19 Pursuant to the IEP, meetings between Plaintiff, her parents and
20 District officials were periodically held.  Plaintiff was
21 assessed and was progressing through the public school system in
22 the District.  As part of her IEP, Plaintiff was assigned an aide
23 while at school.

24      In September 2003, Plaintiff began the seventh grade at La
25 Loma Junior High School in Modesto.  Plaintiff's teacher was
26 Defendant Paula Lentine and Plaintiff was again assigned an aide,

2

Defendant Dawn Melead.  The District's special education
director, Defendant Camille Taylor, was supposed to handle
Plaintiff's transition to La Loma but failed to perform the
necessary tasks to ensure a smooth transition.

On or about September 5, 2003, Plaintiff was in a new
classroom and was confronted with new sounds, new students and
some teasing.  Plaintiff may have reacted in an aggressive
manner, which is predictable for someone with Plaintiff's
disability.  Defendant Melead did not react properly and
aggravated the situation.  She brought Plaintiff to the school
office where she was mishandled by Defendants Red Balfour and
Mike Henderson, the principal and assistant principal, and
others.  Defendant Officer Urquhart was also on the scene and
Plaintiff grew more aggressive when confronted by the officer.

Plaintiff alleges that Officer Urquhart had not received
proper training on how to handle persons with disabilities and
that, as a result, Officer Urquhart panicked and pepper-sprayed
Plaintiff in her face.  Plaintiff alleges that this force was
excessive given the available options within the use of force
continuum.

Two other incidents occurred during September of 2003.
During one incident, Defendant Lentine reminded Plaintiff of the
pepper-spray incident, which greatly upset Plaintiff.  On
September 25, 2003, Plaintiff was taken from her classroom by
Defendant Balfour and Defendant Julie Myers, the other assistant
principal.  Plaintiff begged Defendants Balfour and Myers not to

3

see the police and she grew agitated upon seeing Officer
Urquhart.  Officer Urquhart proceeded to handcuff Plaintiff,
which in addition to being humiliating, aggravated the situation.

Plaintiff was suspended from school after this incident.  On
September 29, 2003, Plaintiff's mother met with Defendant Mary
Jackson, the District's SELPA Director, in an emergency IEP for
placement.  Defendant Jackson had advised Plaintiff's parents
that such a placement was necessary for Plaintiff to continue
receiving special education services.  Plaintiff's parents signed
the IEP under duress, having been told that if they did not, no
services would be provided to Plaintiff.

Plaintiff's parents complained verbally about this action in
September and October of 2003.  Plaintiff's parents subsequently
complained about the District's conduct in this regard by written
memo.  Plaintiff's parents asserted that Plaintiff was being
treated differently both because she is disabled and because she
is African-American.  In October of 2003, Plaintiff's father
wrote a memo to the District that was sent to the California
Department of Education.  This memo detailed Plaintiff's efforts,
through her parents, to obtain academic records and that those
efforts had been frustrated.  Plaintiff's father also informed
the District that it was out of compliance with the IEP, and a
copy of this notice was sent to the Department of Education.  In
sum, Plaintiff's parents made various complaints to the District
regarding Plaintiff's treatment and situation through January of
2004.

While Plaintiff was a Modesto resident she and her mother moved to Turlock during a temporary separation of Plaintiff's parents.  District Defendants attempted to disqualify Plaintiff as a student in the District based on her residency, despite the fact that Plaintiff's father resided in Modesto.  Plaintiff believes these efforts were in retaliation for the complaints being made by Plaintiff, through her parents.

District Defendants' efforts to disqualify Plaintiff as a student were successful.  The District and its superintendent, Defendant Jim Pfaff, "dropped" Plaintiff as a student and stopped providing her with special education services as of December 5, 2003.  Plaintiff's parents exercised their due process rights and filed a motion to allow Plaintiff to remain in the District. Plaintiff also demanded that she receive speech education five days per week, counseling for the trauma she experienced at La Loma three days per week, private tutoring, medical services and home schooling.

Plaintiff and the District both filed actions with the Special Education Hearing Office.  On or about March 4, 2004, the matters settled and a settlement agreement was signed.  The terms of the settlement are confidential, although it did not prohibit the filing of a tort claim.

## II.  Procedural History

On September 20, 2004, Plaintiff filed her Complaint, which alleges seven causes of action.  The Complaint specifies that all

individual District Defendants are sued in their individual and official capacities except for Defendants Wasden and Enochs, who are specifically sued in only their official capacity.  Compl. ¶¶ 8, 13, 18.

The first cause of action is a section 1983 claim against all Defendants and is based on violations of Plaintiff's rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. Plaintiff alleges that all Defendants "ratified and condoned the conduct of the individual defendants" and that the "supervisory defendants set the official policies, customs, and practices for the two municipal entities that were the moving force behind Plaintiff's constitutional injuries." Compl. ¶ 37.  Plaintiff alleges that District Defendants retaliated against her for her complaints about matters of public concern.  Plaintiff also alleges that Defendants failed to properly train, supervise and otherwise prepare officers employed by the Modesto Police Department to deal with disabled students such as Plaintiff. Compl. ¶ 37.

The second cause of action is a section 1983 claim against those District Defendants considered "supervisory"[1] and is based on violations of Plaintiff's rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments.  It repeats the allegation in claim one that these defendants ratified the conduct of other District Defendants and set the official

---

[1]  These are defined as Defendants Wasden, Jackson, Taylor, Enoch and Pfaff.  Compl. ¶ 40.

6

policies, customs and practices that were the moving force behind Plaintiff's constitutional injuries.  Compl. ¶ 40.

The third cause of action is for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and is against the District only.  Plaintiff alleges that she is a qualifying disabled person and that she was excluded from participation in and denied benefits of the District's services, programs or activities.  Plaintiff alleges that she was discriminated against because of her disability or because of complaints made by Plaintiff's parents on her behalf.

The fourth cause of action is for violation of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*, and is against the District only.  Plaintiff alleges that she is disabled as defined by the Act and that she was denied the reasonable accommodations requested.  These accommodations would not have required a fundamental or substantial modification of the District's programs or standards.  They also would have enabled Plaintiff to meet the requirements of the District's programs and would have prevented Plaintiff's suspension because the failure of the District to reasonably accommodate Plaintiff led directly to her outbursts and subsequent suspension.

The fifth cause of action is for intentional infliction of emotional distress ("IIED") and is against the individual Defendants.  Plaintiff alleges that Defendants' conduct was outrageous and caused Plaintiff emotional distress.  Plaintiff seeks punitive damages under this claim, alleging that the

1  conduct was oppressive and malicious.

2      The sixth and seventh causes of action are for violation of

3  the California Constitution and various state statutes and for

4  assault and battery.  They are against Officer Urquhart and Doe

5  Defendants only and are not at issue at this time.

6      The Complaint seeks general and compensatory damages,

7  punitive damages against the individually-named defendants,

8  interest, fees and costs.  The Complaint also seeks injunctive

9  relief, as will be discussed <u>infra</u>.

10     The City of Modesto and Defendants Wasden and Urquhart filed

11 an answer to the Complaint.  These parties have not joined in the

12 current motion.

13     District Defendants filed a motion to dismiss or, in the

14 alternative, for a more definite statement.  Defendant Red

15 Balfour joined in this motion.  <u>See</u> Doc. 23.

16

17 **III.  Legal Standards**

18     **A.  Motion to Dismiss**

19     Dismissal of a complaint pursuant to Rule 12(b)(6) is proper

20 if "it appears beyond doubt that the plaintiff can prove no set

21 of facts in support of his claim which would entitle him to

22 relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2

23 L. Ed. 2d 80 (1957).  In testing the sufficiency of a complaint

24 against a Rule 12(b)(6) challenge, a court must "accept all

25 material allegations in the complaint as true and construe them

26 in the light most favorable to the plaintiff."  <u>North Star Int'l</u>

8

1  v. Arizona Corp. Comm'n, 720 F.2d 578, 580 (9th Cir. 1983).  The

2  Court need not, however, "accept legal conclusions cast in the

3  form of factual allegations if those conclusions cannot

4  reasonably be drawn from the facts alleged." Clegg v. Cult

5  Awareness Network, 18 F.3d 752 (9th Cir. 1994).

6      A complaint may be dismissed as a matter of law if there is

7  a lack of a cognizable legal theory or if there are insufficient

8  facts alleged under a cognizable legal theory.  Balistreri v.

9  Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  The

10 Court must determine whether or not it appears to a certainty

11 under existing law that no relief can be granted under any set of

12 facts that might be proved in support of a plaintiff's claims.

13 De La Crux v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978), *cert.*

14 *denied*, 441 U.S. 965, 99 S. Ct. 2416, 60 L. Ed. 2d 1072 (1979).

15     **B.  Motion For a More Definite Statement**

16     Rule 12(e) allows for a motion for a more definite statement

17 if the pleading "is so vague or ambiguous that a party cannot

18 reasonably be required to frame a responsive pleading." Fed. R.

19 Civ. P. 12(e).  Motions for a more definite statement are

20 disfavored, but are within the Court's discretion and may be

21 appropriate in certain situations.  "[P]roper pleading under Rule

22 8 requires a pleading to contain allegations of each element of

23 the claim.  If it does not, and if the deficiency is not so

24 material that the pleading should be dismissed under Rule

25 12(b)(6), a more definite statement is appropriate." 2 Moore's

26 Federal Practice, § 12.36[1] (Matthew Bender 3d ed.).  However,

"where the information sought by the moving party is available and/or properly sought through discovery the motion [for a more definite statement] should be denied." Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 950 (E.D. Cal. 1981).

## III.  Discussion

### A.  Fifth & Eighth Amendment Theories

Plaintiff concedes that her section 1983 claims fail to the extent they are based on violation of her rights under the Fifth and Eighth Amendments to the United States Constitution.  None of the District Defendants are federal actors to whom the Fifth Amendment applies, see Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 1994), and Plaintiff was not arrested or subjected to cruel and unusual punishment such that the Eighth Amendment would apply.  Id.  To the extent claims one and two are based on the Fifth and Eighth Amendments, they are DISMISSED WITH PREJUDICE as against all Defendants.

### B.  Eleventh Amendment & Capacity Issues

#### 1.  Claim One As Against the District

Plaintiff concedes that her claims for money damages under section 1983 against the District are barred by the Eleventh Amendment.  See Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 251 (9th Cir. 1992).  As a state agency, the District is not a "person" within the meaning of section 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989).

As the District is not subject to suit under section 1983,

10

1  claim one is hereby DISMISSED WITH PREJUDICE as against the

2  District.

3       **2.   Claims One and Two For Monetary Damages As Against**

4            **District Defendants Sued in Official Capacities**

5       The Eleventh Amendment's prohibition of money damages

6  applies both to entities and to individuals who are sued in their

7  official capacities.  See Belanger, 963 F.2d at 251 (9th Cir.

8  1992); Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092,

9  1100 n.4 (9th Cir. 2000).  To the extent claims one and two seek

10 monetary damages against the individual District Defendants sued

11 in their official capacities they are DISMISSED WITH PREJUDICE.

12       **3.   Claim Five As Against Individual District**

13            **Defendants Sued in Official Capacities**

14      District Defendants argue that to the extent Plaintiff's

15 fifth claim for relief is against the individual District

16 Defendants in their official capacities, it must be dismissed

17 with prejudice.  As discussed in the previous section, money

18 damages are not available against individuals sued in their

19 official capacity.  Under the *Ex parte Young* exception, suits

20 seeking prospective injunctive relief against individuals in

21 their official capacities for violations of federal statutory and

22 constitutional rights are permitted.  Emma C. v. Eastin, 985 F.

23 Supp. 940, 946 n.8 (N.D. Cal. 1997).  The exception does not,

24 however, apply to suits "seeking relief against state officials

25 for violations of state law."  Id. at 946.

26      Claim five is a state law tort claim.  Accordingly, to the

extent claim five seeks monetary and injunctive relief against the individual District Defendants sued in their official capacities, it is prohibited.  Claim five is DISMISSED WITH PREJUDICE as against the individual District Defendants sued in their official capacities.

### C.   Subject Matter Jurisdiction Regarding Special Education Allegations

District Defendants argue that to the extent Plaintiff's section 1983, ADA and Rehabilitation act claims (one through four) are based on certain special education allegations, they must be dismissed because they fall within the Individuals with Disabilities Education Act ("IDEA") and require exhaustion of administrative remedies, which District Defendants argue is lacking.  Failure to exhaust administrative remedies deprives a court of subject matter jurisdiction.  District Defendants acknowledge that, to the extent Plaintiff's claims are based on physical violations and seek monetary relief, they are not within the IDEA and do not require exhaustion.

### 1.   The Exhaustion Requirement

A plaintiff is generally not required to exhaust administrative remedies prior to seeking relief pursuant to the Rehabilitation Act, see King v. County of Los Angeles, 633 F.2d 876, 879 (9th Cir. 1980), or Title II of the ADA, see Bogovich v. Sandoval, 189 F.3d 999, 1002 (9th Cir. 1999).  An exception to this general rule is if a plaintiff is "seeking relief that is also available" under the IDEA.  The IDEA specifies that:

> Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal Laws protecting the rights of children with disabilities, <u>except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedure under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part</u>.

20 U.S.C. § 1415(l) (emphasis added).

The purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." <u>Robb v. Bethel Sch. Dist. No. 40</u>, 308 F.3d 1047, 1049 (9th Cir. 2002) (quoting 20 U.S.C. § 1400(d)). The IDEA provides procedural protections to this end in that:

> Parents are entitled to (1) examination of all relevant records pertaining to evaluation and educational placement of their child; (2) prior written notice whenever the responsible educational agency proposes, or refuses, to change the child's placement; (3) an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and (4) an opportunity for an impartial due process hearing with respect to such complaints.

<u>Id.</u> (citing <u>Honig v. Doe</u>, 484 U.S. 305, 311-12, 98 L. Ed. 2d 686, 108 S. Ct. 592 (1998)). "If a hearing is held by a state agency, as is the case in California, any party dissatisfied with the result may file a civil action." <u>Christopher S. v. Stanislaus County Office of Educ.</u>, 384 F.3d 1205, 1210 (9th Cir. 2004).

1    Money damages are not a remedy available under the IDEA.  Witte
2    v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999).

3        In Robb, 308 F.3d at 1049, the Ninth Circuit held that "a
4    plaintiff cannot avoid the IDEA's exhaustion requirement merely
5    by limiting a prayer for relief to money damages."  The court
6    defined "available relief" to mean relief suitable to remedy the
7    wrong done and it may not necessarily be the relief sought by the
8    plaintiff.  Id.  The court stated that the "dispositive question
9    generally is whether the plaintiff has alleged injuries that
10   could be redressed to any degree by the IDEA's administrative
11   procedures and remedies.  If so, exhaustion is required."  Id. at
12   1050.  If the determination of whether a remedy is available
13   under the IDEA is unclear, exhaustion is required so that
14   educational agencies are first given a chance to "ascertain and
15   alleviate the alleged problem."  Id.

16              **2.  Plaintiff's Special Education Allegations**

17       Plaintiff states seven special education allegations[2]
18   regarding the District's failure to meet her special education
19   needs: (1) Defendant Taylor did not adequately prepare for
20   Plaintiff's transfer to La Loma, Compl. ¶ 20; (2) Plaintiff was
21   wrongfully deprived of most IEP-mandated services after September

22   _____

23       [2] District Defendants have characterized these allegations as
     separate "claims" and list these allegations as claims 4-10.
24   Defs.' Reply at 2.  To avoid confusing Plaintiff's claims with her
     causes of action/claims for relief, the court declines to follow
25   this labeling and will label these "special education allegations."
     Special education allegations one through seven correspond with
26   Defendants' "claims" four through ten.

                                    14

25, 2003, Compl. ¶ 27; (3) Plaintiff was wrongfully suspended, Compl. ¶ 24; (4) Plaintiff's parents were coerced into agreeing to an improper emergency IEP, Compl. ¶ 24; (5) Plaintiff's parents were wrongfully refused access to Plaintiff's school records, Compl. ¶ 24; (6) efforts were made to wrongfully disqualify Plaintiff from special education services based on Plaintiff's residency, Compl. ¶¶ 27-28; and (7) Plaintiff's special education services were wrongfully terminated on December 5, 2003.  Compl. ¶ 28.

### 3. Are Plaintiff's Allegations Within the IDEA?

District Defendants argue that Plaintiff's special education allegations fall within the scope of IDEA remedies because they can be redressed within the scheme of the IDEA.  Defendants assert that special education allegations one, two, three, four, six and seven constitute complaints that Plaintiff was not provided with appropriate special education services as required by the IDEA.  Defendants also argue that special education allegation four, that Plaintiff's parents were forced to sign an emergency IEP, is a complaint that Plaintiff's parents were not allowed to participate meaningfully in Plaintiff's special education needs as provided by the IDEA.  Defendants assert that special education allegation five, that Plaintiff's parents were wrongfully refused Plaintiff's school records, is a violation of the IDEA, 20 U.S.C. § 1415(g), and can be redressed by the IDEA.

Plaintiff argues in response that she is seeking remedies other than those provided for in the IDEA in that her claims for

injunctive relief relate only to her section 1983 claim and not to her claims under the ADA and the Rehabilitation Act.  Both arguments are unavailing.  By its terms, section 1514(l) of the IDEA applies to all federal statutes, including section 1983. Additionally, as the court held in <u>Robb</u>, the question is not whether the remedy sought by Plaintiff is available under the IDEA, but whether the claims can be redressed under IDEA.

The Court agrees with Defendants that, with one exception, Plaintiff's special education allegations constitute injuries that can be redressed within the IDEA.  <u>See</u> <u>generally</u>, 20 U.S.C. § 1414(d) (regarding IEPs); <u>Robb</u>, 308 F.2d at 1049 (stating procedural safeguards of the IDEA permit parental involvement and that parents are entitled to review relevant records).  Special education allegations one, two, four, five, six and seven specifically relate to Plaintiff's special education program are within the scope of IDEA remedies.

The Court is unconvinced, however, that Plaintiff's special education allegation four, that she was wrongfully suspended, falls within the scope of the IDEA.  Defendants have cited no authority for the proposition that a claim of wrongful suspension is within the scope of IDEA.  The wrongful suspension allegation appears to have little if anything to do with Plaintiff's rights as a special education student versus her rights as a student generally; construing the facts most favorably to the Plaintiff, special education allegation four is outside the IDEA.

To the extent the injuries alleged in Plaintiff's special

education allegations could have been redressed within the scope

of the IDEA, Plaintiff was required to exhaust her administrative

remedies before bringing a civil action.

### 4. Settlement as Exhaustion

Plaintiff asserts that the confidential settlement agreement

between her parents on her behalf and the District Defendants

sufficed to exhaust her administrative remedies.  District

Defendants argue that a hearing is required in order for

administrative remedies to be exhausted and that, because there

was a settlement, Plaintiff is not an "aggrieved" party entitled

to appeal.  District Defendants also argue that even if the

settlement agreement were sufficient, parties cannot consent to

waive subject matter jurisdiction.

The Ninth Circuit has not specifically addressed the issue

of whether a settlement agreement may be sufficient for

exhaustion in an IDEA case.  Two district courts have reached

differing results.  In Woods v. New Jersey Dep't of Educ., 796 F.

Supp. 767, 776 (D.N.J. 1992), the parties reached a settlement

after the hearing had begun.  The settlement agreement was

approved by an ALJ, who stated the settlement was voluntary,

fully disposed of all the issues, and was final and appealable.

Id.  The court stated that it had subject matter jurisdiction

under 20 U.S.C. § 1415 because the plaintiff was "aggrieved by

the findings and decision of the ALJ" in the settlement

agreement.  In contrast, in Hamilton v. Bd. of Sch. Comm'rs, 993

F. Supp. 884, 890 (D. Ala. 1996), aff'd without opinion, 112 F.3d

17

1172 (11th Cir. 1997), the court found that a settlement agreement was not tantamount to exhaustion. The court stated that it was unlike the case in <u>Woods</u> because the settlement agreement was entered into prior to any hearing being conducted and was not approved by an ALJ.

In order to evaluate what, if any, effect the settlement agreement in this case might have, the Court requested that the parties submit a copy of the settlement agreement.[3] The agreement was submitted under seal and it unnecessary to disclose the contents. As in <u>Hamilton</u> and unlike the case in <u>Woods</u>, the settlement agreement in this case was not entered into after hearings had begun and it was not approved of by an ALJ or other official. Because no hearing was conducted as to Plaintiff's IDEA related issues, she is not an aggrieved party under the statute and her administrative remedies have not been exhausted. <u>See also</u> <u>Weber v. Cranston Sch. Comm.</u>, 212 F.3d 41, 53 (1st Cir. 2000) (finding that only hearing will exhaust administrative remedies under IDEA).

To the extent Plaintiff's section 1983, ADA and rehabilitation act claims are based on special education allegations 1-3 and 5-7, they are DISMISSED WITH PREJUDICE.[4]

---

[3] Although a document outside the pleadings, consideration of the settlement agreement is proper. <u>See</u> <u>Branch v. Tunnel</u>, 14 F.3d 449, 454-55 (9th Cir. 1994) (stating that court may consider documents whose contents are alleged in complaint on motion to dismiss); Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 9:85, p 9-21 (The Rutter Group 2005).

[4] Because 20 U.S.C. § 1415(l) requires exhaustion "before the filing of a civil action," it would be inappropriate to grant leave

1    **D.  Plaintiff's Remaining Federal Claims**

2         To state a claim under section 1983 a plaintiff must allege

3    a deprivation of a federal or Constitutional right by a person

4    acting under color of state law.   18 U.S.C. § 1983.

5              **1.  Substantive Due Process Violation- Claims One & Two**

6                   **a.  Behavior that Shocks the Conscience**

7         District Defendants argue that the facts alleged are

8    insufficient to support a claim for violation of Plaintiff's

9    substantive due process rights as asserted in the first and

10   second causes of action.   District Defendants argue that the

11   pepper-spray and handcuffing actions in this case do not "shock

12   the conscience" so as to state a claim for violation of

13   substantive due process.   District Defendants also argue that

14   even those allegations are sufficient to allege a due process

15   violation, they are not personally alleged against any of the

16   District Defendants and Plaintiff's allegation of conspiracy is

17   insufficient.

18        Students have a constitutional right under the Fourteenth

19   Amendment to be free from violations of bodily integrity,

20   including "freedom from excessive physical abuse by school

21   employees." Plumeau v. Sch. Dist. No. 40, 130 F.3d 432, 438 (9th

22   Cir. 1997) (quoting Ingraham v. Wright, 430 U.S. 651, 674, 51 L.

23   Ed. 2d 711, 97 S. Ct. 1401 (1977)).   Although in Graham v.

24   Connor, 490 U.S. 386, 394-95, 104 L. Ed. 2d 443, 109 S. Ct. 1865

25   _____

26   to amend in the event that Plaintiff subsequently exhausts her
     administrative remedies.

1  (1989), the Supreme Court held that claims of excessive force are
2  to be analyzed under the Fourth Amendment's objective
3  reasonableness standard, as recently as 2001 the Ninth Circuit
4  reiterated that claims not involving an arrest or custodial
5  situation and claims by students asserting the right to be free
6  of violations of bodily integrity remain within the purview of
7  the Fourteenth Amendment.  <u>Fontana v. Haskin</u>, 262 F.3d 871, 882
8  (9th Cir. 2001).

9      The threshold question in a substantive due process claim is
10  "whether the behavior of the governmental officer is so
11  egregious, so outrageous, that it may fairly be said to shock to
12  contemporary conscience."  <u>Id.</u> at 882 n.7 (quoting <u>County of</u>
13  <u>Sacramento v. Lewis</u>, 523 U.S. 833, 846, 140 L. Ed. 2d 1043, 118
14  S. Ct. 1708 (1998)).

15      The facts as alleged by Plaintiff that might, if proven,
16  "shock the conscience" are as follows: the use of pepper-spray by
17  Officer Urquhart; the restraint of Plaintiff in handcuffs, also
18  by Officer Urquhart; the mishandling of Plaintiff by Defendants
19  Balfour and Henderson as they removed Plaintiff from her
20  classroom; the under-training and overreaction of Defendant
21  Melead, Plaintiff's aide, to Plaintiff's reaction to being teased
22  and in a new environment; the reminding of the pepper-spray
23  incident by Plaintiff's teacher; and Defendants Balfour and
24  Myers' ignoring of Plaintiff's pleas not to see the police.

25      This conduct, at this stage in the litigation, is sufficient
26  to state a claim for a substantive due process violation.  That

school officials and/or a police officer working with school officials would use pepper-spray and handcuffs to restrain a thirteen year old mentally disabled child is shocking.  The cases cited by District Defendants, neither of which is binding authority, in support of their argument that the behavior complained of does not shock the conscience are not persuasive at this point.  Defs.' Mot. at 9 (citing Costello v. Mitchell Pub. Sch. Dist. 79, 266 F.3d 916, 919 (8th Cir. 2001); Abeyta v. Chama Valley Indep. Sch. Dist., 77 F.3d 1253, 1258 (10th Cir. 1996)). Both were procedurally dissimilar; they involved motions for summary judgment rather than dismissal.  Both cases are also factually distinguishable; they involved allegations of name-calling by teachers and other generally unprofessional behavior that did not physically harm the students involved.

Where Plaintiff's section 1983 claims fail as to this issue is in the allegation of conspiracy.  To state conspiracy sufficient to survive a motion to dismiss, a plaintiff must plead specific facts to support the existence of the alleged conspiracy.  Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988) (stating that a "mere allegation of conspiracy without factual specificity is insufficient").  The Complaint makes the following allegations:

> 34.  Plaintiff is informed and believes that the acts by the individual defendants, as described above, were part of an agreement or a concerted course of conduct, with the goal being to harm or injury the plaintiff.

21

35.  Plaintiff was injured as a direct result of the efforts by the individual defendants who acted in furtherance of the conspiracy or agreement to damage or injure Plaintiff.

Compl. ¶¶ 34-35.  There are no factual allegations in the Complaint to support the conspiracy allegation; indeed, the most serious of the actions, the pepper-spray incident, is alleged by Plaintiff to be the result of Officer Urquhart's panicking, not an agreement to harm Plaintiff.  Compl. ¶ 22.

If the allegations not personally alleged against District Defendants are removed from the above equation, the remaining allegations do not "shock the contemporary conscience" sufficient to support a claim of a substantive due process violation.

### b.  Failure to Protect

In her opposition Plaintiff puts forth an alternate theory that is sufficiently pleaded.  Section 1983 liability may lie where there is an affirmative duty to protect on the part of the defendant in a school abuse case.  See Plumeau, 130 F.3d at 438 (upholding summary judgment where plaintiffs failed to show issue of material fact regarding, *inter alia*, an "affirmative duty to protect"); see also Balistreri, 901 F.2d at 699-700 (noting that duty to protect may arise by virtue of a special relationship).  Here, Plaintiff argues that District Defendants had a duty to protect Plaintiff, a mentally disabled minor, from the use of excessive force by Officer Urquhart because of their special relationship with Plaintiff.  District Defendants did not address this issue in their reply.  Plaintiff's allegations regarding

22

failure to protect are sufficient to state a substantive due process claim.

In sum, to the extent claims one and two for violation of Plaintiff's substantive due process rights rely on the alleged conspiracy to show behavior that shocks the conscience, the facts alleged are insufficient and claims one and two are DISMISSED to that extent.  However, to the extent claims one and two are based on the failure to protect theory, they are sufficient and the motion to dismiss is DENIED.  Plaintiff is granted leave to amend her complaint to include facts regarding conspiracy and/or behavior that "shocks the contemporary conscience."

### 2.   Procedural Due Process Violation- Claims One & Two

District Defendants argue that Plaintiff has not sufficiently pleaded a claim for a procedural due process violation.  Plaintiff did not specifically address this in her opposition and it appears from the Complaint that Plaintiff is raising a substantive due process claim only.  Accordingly, to the extent claims one and two are based on the violation of Plaintiff's procedural due process rights, they are DISMISSED with leave to amend.

### 3.   Equal Protection

To state a claim for violation of the equal protection clause of the Fourteenth Amendment a plaintiff must allege that she was treated differently from other similarly situated persons.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985); Willowbrook v.

1    Olech, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073

2    (allowing for equal protection claim by "'class of one' where the

3    plaintiff alleges that she has been intentionally treated

4    differently from others similarly situated and there is no

5    rational basis for the difference in treatment") .

6         The Complaint alleges that "Plaintiff through her parents

7    complained about the perception that Plaintiff was being treated

8    differently not only because she is disabled but also because she

9    is black, or African-American."  Compl. ¶ 24.  District

10   Defendants argue that this assertion is insufficient because it

11   is based on a "perception" and does not allege "that any of the

12   actions taken by the Defendants occurred because of racial

13   animus."  While this allegation may not be as crystalline as

14   might be desired, given the liberal pleading standards and taking

15   the facts alleged in the Complaint as true, it can be inferred

16   from the statements made by Plaintiff's parents and the facts in

17   the Complaint as a whole that Plaintiff was treated differently

18   based on her race and/or status as a disabled student.  To the

19   extent Plaintiff's section 1983 claims are based on an equal

20   protection theory, they are sufficient and District Defendants

21   motion to dismiss on this basis is DENIED.

22        In sum, District Defendants' motion to dismiss Plaintiff's

23   section 1983 claims is GRANTED IN PART AND DENIED IN PART.

24            **4.  Motion for a More Definite Statement**

25        District Defendants argue that the Complaint is vague and

26   uncertain and object to Plaintiff's reference to the first and

fourteenth amendments "without clarification about which portions of which Amendments are supposed to apply to which items on her undifferentiated laundry list of fact allegations." Defs.' Reply at 13. Defendants fail to cite a case in which such pleading was found to be insufficient and admit that a Plaintiff is not required to specify a particular legal theory.

A motion for a more definite statement is inappropriate here. It cannot be said that Plaintiff's Complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). The allegations in the Complaint are sufficient to enable a defendant to, at the very least, discern the general basis for Plaintiff's claims and frame a general denial.

### E.   Intentional Infliction of Emotional Distress

To state a claim for IIED, a plaintiff must allege that "(1) the defendant engaged in extreme or outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." Ross v. Creel Pub. Co., Inc., 100 Cal. App. 4th 736, 744-45 (2002). "Outrageous conduct" is that which is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. at 745.

District Defendants argue that Plaintiff's factual allegations do not rise to the level of "extreme and outrageous"

conduct required to state a claim for IIED, largely due to the
insufficiency of Plaintiff's conspiracy allegation, discussed
supra.  District Defendants do not cite any cases in which IIED
has or has not been sufficiently stated to contrast with
Plaintiff's allegations.

Here, Plaintiff's teacher, Defendant Letine, taunted the
mentally disabled child about a traumatic incident, the use of
the pepper spray, and threatened Plaintiff with its repeated use.
Other District Defendants threatened Plaintiff with seeing the
police and intentionally brought Plaintiff to Officer Urquhart a
second time despite her pleas not to see the police.

Even ignoring the fact that Plaintiff was placed in
handcuffs at the hands of Officer Urquhart, at this stage in the
litigation, this sort of conduct, particularly by school
officials who are entrusted with the care of hundreds of
children, is sufficient to state a claim for IIED.  Defendants'
motion to dismiss claim five as against the individual District
Defendants in their individual capacities is DENIED.

**F.  Injunctive Relief**

District Defendants argue that Plaintiff lacks standing to
seek the injunctive relief delineated in the Complaint.  The
Complaint seeks an injunction in the form of an order requiring
Defendants: 1) stop all harassing acts aimed at Plaintiff and
persons affiliated with her; 2) retrain the individually named
defendants regarding the handling of disabled children; 3) cease
using real or implied threats of violence in police work; 4)

terminate all of the individually named defendants with a history
of similar malfeasance; 5) permit Plaintiff to re-enter the
District and provide reasonable accommodation for her; 6) permit
Plaintiff's parents reasonable access to their daughter, her
academic records within the District and her teacher and aides;
and 7) end the pattern or practice of retaliation against persons
who complain about the District or is employees.

Standing to seek injunctive relief under Article III of the
Constitution requires that a party demonstrate an "injury that is
actual or imminent, not conjectural or hypothetical.  In the
context of injunctive relief, the plaintiff must demonstrate a
real or immediate threat of an irreparable injury." Hangarter v.
Provident Life & Accident Ins. Co., 373 F.3d 998, 1021-22 (9th
Cir. 2004) (quoting Clark v. City of Lakewood, 259 F.3d 996, 1007
(9th Cir. 2001)).  In Hangarter, the district court ordered the
defendants to "obey the law refrain from future violations,
including, but not limited to, targeting categories of claims or
claimants, employing biased medical examiners, destroying medical
reports, and withholding from claimants information about their
benefits." Id.  The Ninth Circuit reversed the injunction
because the plaintiff was not threatened by the defendant's
conduct.  Id.

Here, District Defendants argue that Plaintiff has failed to
plead facts that support an inference that there are any on-going
violations of her own or her parents' rights or that there is any
imminent threats of harm.  Plaintiff did not respond to this

27

1 argument in her opposition.  The Court agrees with District

2 Defendants.  Because Plaintiff lacks standing to seek injunctive

3 relief, her claims are DISMISSED with leave to amend to the

4 extent they seek injunctive relief.

5     Plaintiff's section 1983 claims as against the individual

6 District Defendants in their official capacities rise and fall

7 with Plaintiff's ability to seek injunctive relief, as money

8 damages are not available against those defendants.  In her

9 amended Complaint Plaintiff may include the individual District

10 Defendants in her section 1983 claim only if she also requests

11 injunctive relief.

12     **ACCORDINGLY, IT IS ORDERED** that the motion for a more

13 definite statement is DENIED and the motion to dismiss is GRANTED

14 IN PART AND DENIED IN PART as follows:

15     To the extent they are based on violations of the Fifth and

16 Eighth Amendments, Plaintiff's first and second causes of action

17 are DISMISSED WITH PREJUDICE as to all Defendants.

18     To the extent they seek injunctive relief, Plaintiff's

19 causes of action are DISMISSED with leave to amend as to all

20 District Defendants.

21     To the extent they are based on special education

22 allegations 1-3 and 5-7, Plaintiff's first, second, third and

23 fourth causes of action are DISMISSED WITH PREJUDICE as to

24 District Defendants.

25     As to Defendant District: Plaintiff's first cause of action

26 is DISMISSED WITH PREJUDICE.

28

1    As to individual District Defendants sued in their <u>official</u>
2  <u>capacities</u>: to the extent Plaintiff's first and second causes of
3  action seek monetary relief they are DISMISSED WITH PREJUDICE;
4  Plaintiff's fifth cause of action is DISMISSED WITH PREJUDICE;
5  and to the extent Plaintiff's first and second causes of action
6  seek injunctive relief and are insufficiently alleged under the
7  Fourteenth Amendment as set forth above, they are DISMISSED with
8  leave to amend.

9    As to individual District Defendants sued in their
10 <u>individual capacities</u>: to the extent Plaintiff's first and second
11 causes of action are insufficiently alleged under the Fourteenth
12 Amendment as set forth above, they are DISMISSED with leave to
13 amend; Defendants' motion to dismiss the fifth cause of action is
14 DENIED.  To the extent Plaintiff's first and second causes of
15 action are based on the First Amendment and the substantive due
16 process/equal protection components of the Fourteenth Amendment,
17 District Defendants' motion to dismiss is DENIED.

18    **FURTHER ORDERED** that Plaintiff's amended complaint shall be
19 filed in 30 business days.

20
21 IT IS SO ORDERED.

22 **Dated:  September 9, 2005**          **/s/ Robert E. Coyle**
23 ia40ij                        UNITED STATES DISTRICT JUDGE

24
25
26