IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE BANKS, a minor, by and through her Guardian Ad Litem, ROBBIN BANKS,<br><br>Plaintiff,<br><br>vs.<br><br>MODESTO CITY SCHOOLS DISTRICT, et al.,<br><br>Defendant. | No. CV-F-04-6284 OWW/SMS<br><br>ORDER DENYING DEFENDANTS' JOINT MOTION FOR SANCTIONS UNDER RULE 37(b), FEDERAL RULES OF CIVIL PROCEDURE (Doc. 51) |

This action was commenced by Complaint filed on September 20, 2004. Plaintiff is now proceeding pursuant on the First Amended Complaint filed on October 24, 2005. Defendants are the Modesto City Schools District, the City of Modesto, Paula Lentine, Jim Pfaff, James C. Enochs, John Bryon, Mary Jackson, Camille Taylor, Dawn Melead, Red Balfour, Mike Henderson, Julie Myers, Roy W. Wasden, Erin Urquhart, and Does 1-100. The First Amended Complaint alleges that Rosie Banks has been diagnosed

1

with autism or an autistic-like condition; that Rosie was provided with an IEP by the District; that, in September 2003 Rose started at La Loma Junior High School, with Defendant Lentine as her primary teacher and Defendant Melead as her aide; that Defendant Taylor did not do all the things necessary to ensure proper and adequate transfer of Rosie to La Loma Junior High School; that, on September 3, 2003, Rosie reacted aggressively in a classroom when confronted with new sounds, new students, and some teasing; that Melead did not handle the aggression properly and aggravated the situation; that Melead brought Rosie to the school's office where Rosie was manhandled by Defendants Balfour, Henderson and others; that Defendant Urquhart panicked and pepper-sprayed Rosie in her face; that two other incidents of a similar nature occurred at the school during September 2003; that on September 25, 2003, Rosie was taken out of Lentine's classroom and was taken away by Defendants Balfour and Myers, begging the District employees not to call the police; that Rosie grew agitated upon seeing Urquhart and Urquhart aggravated the situation by handcuffing Rosie and humiliating her; that Rosie was thereafter suspended from school; that Robbin Banks and Charles Banks, Rosie's parents, met with Defendant Jackson for an emergency IEP which Jackson informed was necessary in order for Rosie to continue receiving special education related services; that the emergency IEP was signed under duress; that Rosie's parents orally complained about this and complained about the perception that Rosie was being treated differently

because she was disabled and African-American and threatened to sue; that Rosie's parents complained on her behalf about her suspension; that, after Robbin and Charles temporarily separated, Rosie and her mother moved to Turlock; that the District stopped providing most of the services mandated by the IEP; that, on October 31,2003, Defendant Bryon started efforts to disqualify Rosie as a student in the District based on residency; that these efforts were in retaliation for the complaints Rosie was making through her parents; that efforts to disqualify Rosie continued through November 2003 despite information that Charles maintained residency within the District; that, in retaliation for Rosie's complaints and after using the services of investigators, the District and Defendant Pfaff dropped Rosie as a student and stopped providing special education services to her without due process of law, in retaliation for her complaints, and in discrimination based on her disability and race.  The First Amended Complaint alleges causes of action for violation of 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, intentional infliction of emotional distress, violation of California Civil Code §§ 51.7 and 52, and assault and battery

    On July 5, 2006, a Stipulation and Order to Modify the Scheduling Order was entered, wherein the parties stipulated to vacate previously set dates for completion of discovery, nondispositive and dispositive motions, settlement conference, pretrial conference and jury trial.  The basis for the

Stipulation and Order is stated:

> The parties agreed to an Initial Disclosure Date of May 5, 2006. As a result of the death of a Grandparent in the Plaintiff's family, there has been a delay in the Plaintiff providing information to Plaintiff's counsel to complete and exchange Plaintiff's Initial Disclosure. Plaintiff's counsel has also filed with this Court a Notice of Unavailability of Counsel advising that he will be unavailable July 1 through July 31, 2006, and November 17, through November 26, 2006.

Defendants jointly move for sanctions pursuant to Rule 37, Federal Rules of Civil Procedure, because of Plaintiff's continued failure to serve her initial disclosures under Rule 26(a)(1), Federal Rules of Civil Procedure. Defendants move for terminating sanctions.[1]

At the time the motion for sanctions was filed, October 2, 2006, the initial disclosures had not been filed. Plaintiff served the initial disclosures on defendants' counsel by mail on November 27, 2006, the same date that Plaintiff filed her opposition to the motion for sanctions.

**A.  Background.**

Pursuant to a letter dated March 14, 2006 from Susan Denious, counsel for some of the Defendants, to David Cervantes, counsel for other Defendants, and Russell A. Robinson, counsel for Plaintiff, the parties agreed to an initial disclosure date

---

[1] In their opening brief, Defendants alternatively moved for evidentiary sanctions and/or monetary sanctions. However, in Defendants' reply brief they argue solely for dismissal as a sanction, specifically contending the less drastic sanctions than dismissal are not sufficient.

4

1  of April 28, 2006.  By letter dated April 11, 2006, Ms. Denious
2  requested an extension to make initial disclosures to May 5,
3  2006.  On April 11, 2006, Mr. Robinson sent an e-mail to Ms.
4  Denious agreeing to the extension to May 5, 2006.  By letter
5  dated May 31, 2006, Ms. Denious advised Mr. Robinson that
6  Defendants had not received Plaintiff's initial disclosures and
7  requested that they be provided right away.  Ms. Denious spoke
8  with Mr. Robinson during the third week in June 2006 and was
9  advised that he would complete the initial disclosures and serve
10 them on June 26, 2006.  Thereafter, the parties entered into the
11 July 5, 2006 Stipulation and Order setting new scheduling dates.
12      On August 1, 2006, David Cervantes, counsel for Defendants
13 City of Modesto, Roy W. Wasden, and Erin Urquhart, sent an e-mail
14 to Mr. Robinson, advising Mr. Robinson that neither he nor Susan
15 Denious, counsel for the remaining defendants, have received the
16 initial disclosures and requesting to be advised when defendants'
17 attorneys may expect the initial disclosures.  Mr. Robinson did
18 not respond to this e-mail inquiry.  Mr. Cervantes sent another
19 e-mail to Mr. Robinson on August 1, 2006, again advising that the
20 initial disclosures had not been received although Mr. Robinson
21 had previously stated that they would be mailed on June 30, 2006.
22 Mr. Robinson did not respond to this second e-mail.  Mr. Robinson
23 advised Ms. Denious in a telephone conversation in late June that
24 the initial disclosures would be completed and placed in the mail
25 by July 1, 2006.  On August 21, 2006, Ms. Denious sent the
26 following letter to Mr. Robinson in which it is stated in

5

pertinent part:

> Both Mr. Cervantes and I have communicated with you about the matter on several occasions and have received assurances that your disclosure statement would be forthcoming by dates that have long since come and gone. We also waited through your July absence and still have not received anything. Waiting any further will severely affect the defendants' ability to prepare their cases within the timeframes established in the amended scheduling order for this case.
>
> Mr. Cervantes and I jointly request that you serve us with your initial disclosure statement under Rule 26(a) by no later than August 31, 2006. If we do not receive it by that date, both sets of defendants will be forced to file a motion to the court for sanctions up to and potentially including dismissal of the case with the entry of a default judgment. We will also request monetary sanctions for attorneys' fees if we are forced to spend time after August 31, 2006, preparing our motion and defendants' portion of the joint statement regarding the discovery dispute as required by Eastern District Rule 37-251.

On September 8, 2006, Ms. Denious sent a letter to Mr. Robinson by facsimile and U.S. Mail, advising that Magistrate Judge Snyder wanted to have a telephone conference call with her regarding Defendants' proposed motion addressing Plaintiff's failure to provide initial disclosure, that participation by Plaintiff's counsel in the telephone conference was mandatory, and setting forth three dates on which Magistrate Judge Snyder could conduct the telephone conference. Mr. Robinson was asked in this letter to call Ms. Denious' office immediately to advise which of the three dates was acceptable to him. On September 8, 2006, Ms.

Denious also called Mr. Robinson's office and left a voice-mail message stating the alternative dates and times for the telephone conference and that Magistrate Judge Snyder's clerk had advised that the participation in the telephone conference was mandatory. Ms. Denious received no response from Mr. Robinson to the September 8, 2006 letter or her voice-mail communication.

Defendants' motion for sanctions was filed on October 2, 2006 and noticed for hearing before Magistrate Judge Snyder on October 17, 2006.  Pursuant to Rule 78-230(c), Local Rules of Practice, Mr. Robinson's opposition was due by October 16, 2006. No opposition was filed on that date.  However, on October 24, 2006, Magistrate Judge Snyder issued a minute order resetting the hearing on the motion for sanctions before Judge Wanger on December 11, 2006 because of the request for a terminating sanction.  Plaintiff filed an opposition to the motion for sanctions on November 27, 2006, which is timely given the continued hearing date.

In opposing the motion, Mr. Robinson avers in pertinent part:

> 2.  There are at [sic] several reasons for Plaintiff's inability to completely participate in the prosecution of her case to date.  Certainly, Plaintiff Rosie Banks, a severely disabled minor, shares none of the blame.
>
> 3.  I am informed and believe that Plaintiff and her family suffered two calamities which have impeded progress of this case.  The first was a previously disclosed death in the family of a beloved relative.

7

    4.   Second, after having problems obtaining information from Charles Banks - who has been the member of Rosie Banks' family with whom my office has worked most closely - for two months (mid-June through mid-August 2006), I sent an urgent e-mail to both Charles Banks and Robbin Banks on August 9, 2006. Without waiving all the contents of the e-mail, it was at that time I learned in a reply that Charles Banks has been diagnosed with pancreatic cancer. Mr. Banks' condition has seriously impacted the ability, albeit temporarily, of my office from gathering information and confirming the material to be disclosed. I am informed and believe that Robbin Banks is that parent who has far less to deal with the management of the case with my office because she runs a very busy company and now handles day-to-day issues arising from the matters confronting the Banks' severely disabled daughter, the plaintiff Rosie Banks.

    5.   The third reason involves a veritable inability to practice law because of a pattern of harassment and threats by a former client and his girlfriend. A man named Darryl Willingham was displeased when *inter alia* I refused to file an action on his behalf - which I thought would violate FRCP Rule 11. Thereafter, for a period of many months, harassment by Willingham began. At first, he would call me 20-30 times per day. Most of the calls were simply threats that if I did not do as he demanded, I would be criminally prosecuted. This is not the first time a client or former client has threatened me; as a plaintiff's attorney in civil rights cases, I understand that this is an occupational hazard.

    6.   The threats against me took several turns for the worse. Willingham claimed to know where I lived and then claimed to have seen my wife and me together in public. He made overt threats to me via telephone and one physical confrontation with me where he threatened my wife and my four children.

    7.   I made many efforts to obtain assistance from San Francisco's Police Department. In

late December 2005, I went to the Northern (1125 Fillmore Station) and waited for hours while stolen cell phones and missing pets were handled; I was told to wait. Willingham's frequent calls flooded my telephone mail-boxes and I saw him lurking around my office.

8.  One day in January 2006, my car was vandalized.  I knew that Willingham could identify my vehicle because he had ridden with me one day in 2004.

9.  In mid-January 2006, Willingham, who is a registered sex offender, threatened to shoot me.  He made other bizarre threats and calls.

10.  On January 23, 2006, Willingham called me while I was preparing a client for deposition.  He threatened me again and threatened several other people.  That night, after the deposition, which ended at 7:00 p.m., I returned to my office parking lot and saw Willingham lurking around my mini-van (I have four children).  Still, SFPD would not do anything, telling me that there was little it could do.

11.  Then, on January 31, 2006, Willingham threatened a federal judge and an attorney for the State of California.  I drafted and submitted papers for a temporary restraining order, which was not issued.  Several weeks later, I am informed and believe that Willingham was arrested through efforts of the State Police [because of threats to a judge and state employee] and the Daly City Police; I am informed Willingham was required to register as a sex offender in Daly City and was not in compliance.

12.  Still, the Willingham issues would not cease disrupting my practice.  He called me from jail repeatedly.  Then, his 'girlfriend' called me and disrupted my days at my office. One of my employees quit over the harassment in May 2006.

13.  I have had several meetings with defense and prosecuting attorneys in the *People v. Willingham* case.  I am informed that was

9

[sic] held on $500,000 bail. I went to testify in his preliminary hearing on April 10, 2006. I am told that I was deemed 'credible'. Willingham remains in jail (San Mateo County for trial on other matters). His trial in San Francisco was to commence on June 9, 2006, and I was to testify; but, it was continued.

14. Because of Willingham, I am scrambling to practice law, interview people, and set my own calendar right. I did not foresee the long term ramifications Willingham's harassment would have on my practice, the ripples continue to be felt and continue to impact practice of law.

15. I was required to attend hearings at Willingham's San Francisco criminal trial September 8, 11-13, 2006. My entire practice had been disrupted and my calendar impacted through mid-September 2006 by the continued threats by Willingham and acts of harassment perpetrated against me, my staff, and my family by Willingham and his 'girlfriend'.

16. In September 2006, Willingham's defense attorneys in the San Francisco trial started calling my clients in various matters and, I am informed and believe, told some of my clients that I was in fact 'under investigation.' At least one present client, who has a history of hypertension and is severely disabled, became very upset and had to seek medical assistance because of the contact by Willingham's defense counsel in September 2006. These issues required my full attention and took my efforts away from this and other cases.

17. All of the occupants of my building had been threatened over nine months starting in December 2005.

18. Plaintiff will suffer prejudice if the Court grants the present motion. By contrast, the defense will suffer little prejudice if the Court denies the motion. Plaintiff's counsel has served initial disclosures as of this filing and there should be no other delays caused by Plaintiff

10

or her counsel herein.

In reply, Defendants submit two Declarations. George Linn, Risk Manager for the Modesto City Schools District avers:

> 2. In my role as Risk Manager, I have responsibilities for monitoring the status of on-going litigation against the District, addressing budgetary considerations in risk management matters, and making confidential reports, the contents of which I am not authorized to divulge during pending litigation because of attorney-client and work product privileges and closed-session privilege under the Brown Act.
>
> 3. Modesto City Schools has been required to use administrative time and resources in maintaining this litigation in pending status over the period of time in which Plaintiff's initial disclosures were overdue.
>
> 4. One of the individuals who is a named Defendant in this case, Mary Jackson, retired at the end of the last school year and other Defendants and witnesses have been re-assigned or have left the District for other employment. In my experience, reassignments and departures from the District make it more difficult for me and defense counsel to obtain information and participation of witnesses who are needed in litigation that has remained open for a long time.

Paula Lentine, employed as a teacher with Modesto City Schools District, avers:

> 2. In September of 2003, Rosie Banks was a student who was assigned as a student in my class at La Loma Junior High School. Two years prior, I had served as Rosie Banks' fifth grade teacher at Beard Elementary School.
>
> 3. On or about September 5, 2003, Rosie Banks seriously assaulted me in the classroom. I sustained physical and emotional injuries from that assault. I remained disabled and unable to work for

11

>approximately six to eight weeks after the assault and received workers' compensation benefits for that period of disability.
>
>4. It was traumatic for me to learn that I was being sued as an individual in this lawsuit after I had worked diligently to help Rosie Banks and I had been the victim of her assault.
>
>5. The delay in getting this lawsuit resolved has caused me to continue to have mental anxiety and emotional distress concerning the incident in which I was attacked. I believe that having this lawsuit come to an end would reduce or eliminate my anxiety and distress related to the events in September 2003.

**B. Governing Standards.**

Rule 26(a)(1), Federal Rules of Civil Procedure, requires parties to make the initial disclosures described in the rule. Rule 37(c)(1) provides in pertinent part:

>A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless the failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Rule 37(b)(2)(C) allows the following sanctions:

>(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or

>                    rendering a judgment by default against the
>                    disobedient party.

### C. **Merits of Motion**.

"Where it is determined that counsel or a party has acted willfully or in bad faith in failing to comply with the rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders, it is within the discretion of the trial court to dismiss the action or to render judgment by default against the party responsible for the noncompliance." *G-K Properties v. Redevelopment Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir.1978). "Disobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir.1993). "Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the court as a serious dispute-settlement mechanism." *G-K Properties*, *id.*

Plaintiff's failure to file the initial disclosures until after this motion for sanctions was filed was willful. Plaintiff has had over 19 months to prepare initial disclosures and only did so after the motion for sanctions was filed. The failure to respond in any way to Defendants' repeated inquiries concerning service of the initial disclosures and the failure to

1  respond to Ms. Denious' September 8, 2006 letter and voice-mail
2  advising Mr. Robinson that Magistrate Snyder wanted to conduct a
3  mandatory telephone conference concerning the failure to file
4  initial disclosures and seeking dates for that conference also
5  demonstrate willfulness.  Mr. Robinson's Declaration in
6  opposition to this motion does not negate willfulness.  The death
7  of Plaintiff's grandmother was the cause of the first delay in
8  providing initial disclosures and resulted in the July 5, 2006
9  Stipulation and Order revising the dates for prosecution of this
10 action.  With regard to the allegations of Willingham's
11 harassment, many of problems are described as having occurred
12 before the agreed-upon date for initial disclosures of May 5,
13 2006 and do not provide any explanation why Mr. Robinson did not
14 make the initial disclosures by late June 2006 after he promised
15 to do so.  The activities he describes as taking place after June
16 2006 do not explain why Mr. Robinson did not contact Defendants'
17 counsel or the Court concerning his alleged inability to serve
18 the initial disclosures.

19      Although Mr. Robinson stated at the hearing that he was
20 unable to retain local counsel to assist him in the prosecution
21 of this action, Mr. Robinson made no effort to withdraw as
22 Plaintiff's counsel or to find substitute counsel once he knew
23 that Willingham was affecting his ability to practice law or
24 prosecute this action.  Furthermore, Mr. Robinson provides no
25 explanation for his failure to respond to Defendants' repeated
26 inquiries concerning service of the initial disclosures or the

14

telephone conference call before Magistrate Judge Snyder, i.e., he did not receive them or could not physically respond. Willfulness is demonstrated by Mr. Robinson's failure to timely oppose the motion for sanctions when it was noticed for hearing before Magistrate Judge Snyder.  With regard to the averments in Mr. Robinson's Declaration concerning the illness of Charles Banks and the busy schedule of Robbin Banks, these do not negate the finding of willfulness.  Robbin Banks is named in this action as Rosie's guardian ad litem.  If Robbin Banks is unable to act as guardian ad litem, she should have asked to be relieved or, at a minimum, advised Mr. Robinson of family problems before Mr. Robinson found it necessary to send an urgent e-mail to Charles Banks on August 9, 2006.  With regard to the averments concerning Charles Banks' illness, the Declaration does not explain why Mr. Banks or some other family member could not have advised Mr. Robinson much sooner that Mr. Banks had any problems in being able to provide information or documentation.

   Because the failure to timely serve the initial disclosures until after the motion for sanctions was filed was willful, dismissal of the action as a sanction is addressed.

     In deciding whether a sanction of dismissal for noncompliance with discovery is appropriate, the district court must weigh five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking discovery; (4) the public policy favoring disposition of cases on their

15

merits; and (5) the availability of less drastic sanctions. *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir.2004).

With regard to the first factor, Defendants argue that the public's interest in expeditious resolution of litigation weighs in favor of dismissal because the entity Defendants are both public agencies and operate by the use of taxpayer dollars, that administrative work is required as long as the litigation remains unresolved, and budgetary considerations must be taken into account.

With regard to the second factor, the eight-month delay affects the Court's need to manage its docket. Because Plaintiff served her initial disclosures on November 27, 2006, the scheduling dates in the July 5, 2006 Stipulation and Order will be inapposite because other discovery has not yet taken place.

With regard to the third factor, Defendants, citing *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275 (9th Cir.1980),[2] a case involving review of a motion to dismiss for failure to prosecute under Rule 41(b), assert that there is a rebuttable presumption of prejudice in favor of defendants resulting from delay.

*Nealey*'s holding is not precisely as characterized by Defendants. In *Nealey*, the Ninth Circuit explained:

> Even where a plaintiff has failed to do what he might have done earlier, he may have an

---

[2]Miscited by Defendants as 762 F.2d 1275.

16

>           explanation that excuses or justifies his
>           failure.  It is at that point that the extent
>           of prejudice to the defendant, if any,
>           becomes important ... 'A weak excuse may
>           suffice if there has been no prejudice; an
>           exceedingly good one might still do even when
>           there has been some.' ... Thus, delay alone
>           should not be deemed to create a
>           '"presumption of prejudice," save in the
>           sense that if the plaintiff proffers no
>           pleading or presents no proof on the issue of
>           [reasonableness], the defendant wins.' ....
>
>           The plaintiff, of course, 'has the ultimate
>           burden of persuasion both as to the excuse
>           for his own delay and as to lack of prejudice
>           to the defendant.' ... However:
>
>> [W]hen such a plaintiff has
>> presented evidence excusing his own
>> delay, he should [not] be
>> automatically barred unless he also
>> presents anticipatory evidence to
>> negate prejudice on the part of the
>> defendant, *an issue as to which the
>> defendant, with his greater
>> knowledge, ought to be required to
>> come forward.*
>>
>> ...
>>
>> In summary, where a plaintiff has come forth
>> with an excuse for his delay that is anything
>> but frivolous, the burden of production
>> shifts to the defendant to show at least some
>> actual prejudice.  If he does so, the
>> plaintiff must then persuade the court that
>> such claims of prejudice are either illusory
>> or relatively insignificant when compared to
>> the force of his excuse.  At that point, the
>> court must exercise its discretion by
>> weighing the relevant factors - time, excuse,
>> and prejudice.

662 F.2d at 1280-1281.

Here, Plaintiff has provided Mr. Robinson's Declaration to excuse the failure to file the initial disclosures.  Because the averments in Mr. Robinson's Declaration are not frivolous,

17

1  Defendants must show actual prejudice.
2       In contending that they have suffered actual prejudice
3  because of the delay in filing the initial responses, Defendants
4  refer to the Declarations quoted above concerning the anxiety and
5  emotional distress suffered by Defendant Lentine because of the
6  delay in resolving this litigation, the waste by the District of
7  administrative time and resources in maintaining this litigation
8  longer than necessary, the retirement and relocation of
9  witnesses, making it more difficult to obtain information from
10 them and their participation in the litigation, the fact that
11 memories fade over time, and the possibility that Rosie Banks has
12 had changes in the status of her mental development, which
13 changes, if they have occurred, might give the trier of fact a
14 misleading or false impression about what perceptual and other
15 abilities Rosie possessed at pertinent times in 2003.
16      With regard to the fourth factor, the public policy favoring
17 disposition of cases on their merits weighs against dismissal.
18      With regard to the fifth factor, Defendants contend that
19 less drastic sanctions will not be sufficient "because
20 Plaintiff's failure to provide initial disclosures was complete
21 and total, rather than affecting only one or few witnesses or
22 documents - i.e., evidence on a smaller scale that could be
23 excluded as an evidentiary sanction while the remainder of the
24 case went forward."  Defendants further assert that monetary
25 sanctions in the form of attorneys' fees "will not begin to
26 compensate Defendants for the harm to Defendants and to the

1  Court's resources caused by the bad faith delay."

2  **D.  <u>Conclusion</u>.**

3  Although the averments in Mr. Robinson's Declaration are not
4  frivolous, his repeated failures to respond to Defendants'
5  inquiries or to the telephone conference before Magistrate Judge
6  Snyder are of concern.  If the harassment of Mr. Robinson was so
7  extreme, he would have been well-advised to associate co-counsel,
8  who is not similarly impacted.  The Ninth Circuit holds that it
9  "may affirm a dismissal where at least four factors support
10 dismissal ... or where at least three factors 'strongly' support
11 dismissal."  *Hernandez v. City of El Monte*, 138 F.3d 393, 399
12 (9th Cir. 1998).

13 Although the public's interest in expeditious resolution of
14 litigation favors dismissal, the public policy favoring
15 disposition of cases on their merits weighs strongly against
16 dismissal and "is particularly important in civil rights cases."
17 *Hernandez*, *id.*  The asserted grounds of prejudice are not acute -
18 delay is an unfortunate incident of modern litigation.  No
19 witnesses have been lost, no evidence is unavailable.
20 Although the Court's ability to manage its dockets has been
21 affected by Plaintiff's failure to timely file the initial
22 disclosures, the prejudice to the Court is not substantial enough
23 at this juncture to weigh in favor of dismissal.

24 The law favors a lesser sanction before dismissal.  However,
25 Defendants assert no lesser sanction is effective.  Consequently,
26 Defendants' request for dismissal of this action as a sanction is

19

DENIED.

However, any further delays by Plaintiff in complying with discovery and court-ordered schedules will not be tolerated. These delays not only prejudice the Defendants' ability to defend this lawsuit, but they prejudice this Court. The amount of time spent on this collective motion because Mr. Robinson did not pick up a phone, send a letter, or an e-mail, has resulted in a needless consumption of judicial resources. Plaintiff and Mr. Robinson are expressly warned that any future failure to timely comply with schedules and orders, unless supported by convincing evidence of good cause given before the expiration of the deadline, will result in dismissal of the action.

ACCORDINGLY, for the reasons set forth above:

Defendants' Joint Motion for Sanctions under Rule 37(b), Federal Rules of Civil Procedure, is DENIED.

IT IS SO ORDERED.

**Dated:   December 18, 2006**              **/s/ Oliver W. Wanger**
668554                                      UNITED STATES DISTRICT JUDGE

20